Good morning, your honors. May it please the court. Also, Dan Maloney, Federal Defender's Office, Reno, Nevada, with supervising attorney at Ramona Costa on behalf of Appellant Mr. Ruben De La Pena. As I was working through this again, there are kind of three issues that I keep coming back to. Number one, there's no question that there is a silver Honda car in this case. And where did the silver Honda car come from? The answer that makes sense is the silver Honda car came from the trooper, just like the dispatcher testified. The second issue is this never came up in the trial court, the fact of the silver Honda car, the significance of how did that happen. And what happened is the defense theory on the information the defendant had was that the car was not called in until after the stop. That turned out to be incorrect, and the defense counsel at that point, I don't think anybody really understood the significance of the silver Honda car as we have set it out before this court. And then the third set of issues would come out too along the lines of, it wasn't brought up in the trial court, it's really being brought up for the first time for you all here today, what difference does it make? Can this court deal with this issue? And under a theory of mistake of fact, mistake of law, which was the same theory argued to the trial judge, and under a theory of a clearly erroneous fact that the car was called in incorrectly and not correctly, and that's why you got the no match, this court would have the authority to reach the issue and to go ahead and reverse. Ms. Laird. I have a couple of questions. The first thing is I can't understand from the record what the difference  between the dispatch tape and the dispatch tape that's currently available to the government. Mr. Laird. Generally speaking, it comes down to the dispatch tape. The defense has a dispatch tape, but the dispatch tape provided to the defense doesn't have the initial call in, and the dispatch tape is so disjointed that you can't really follow like you can with the testimony of the court. Ms. Agnew. So you're saying, if I understand your answer to Judge Kristin, that the dispatch tape that you have is incomplete? Mr. Laird. Yeah, the dispatch tape that was provided for the defense, and I actually . . . because people were talking about that. We didn't send the dispatch tape up. I brought four copies of it. If the court wants me to leave it, I can do a motion . . . Ms. Agnew. So now you're saying the dispatch tape. Are you talking about the one that was provided to the defendant or the entire one? Mr. Laird. Defense Exhibit 1. Ms. Agnew. Okay. Mr. Laird. And . . . Ms. Agnew. So then my next question, sir, is when you said it's disjointed, was there any testimony at . . . well, or anywhere in the record, for that matter, that explains how it was created and specifically what I'm envisioning as a dispatcher sitting there and that they're recording on her end, so I want you to correct me if I'm wrong, and that she's no doubt talking to other people. So is it chopped and spliced to just segregate the conversation that she was having with this particular trooper, or am I misunderstanding that it was in segments? Mr. Laird. I don't have a good answer for you on those. What happens when we play the tapes on our machines is that they come up, Track 1, Track 2, Track 3, and the tracks on the dispatch tape introduced by the government and the one that was provided as a supplemental exhibit, those track very closely, Track 1, 2, 3, right down the CAD report, which was the report that the dispatcher prepares in real time as the information is coming in. Are you making . . . am I making sense? Ms. Agnew. Yes, so far. Ms. Agnew. Okay.  Mr. Laird. And the first dispatch tape is just random. You'll get, like, Track 1, 10-4, you know, Track 2, 24-48. There's enough information there to let you understand that it is the same incident, but it just doesn't have near the information that the dispatch tape provided by the . . . provided to the . . . so . . . Ms. Agnew. And when was that discovered? Mr. Laird. I'm not sure when it came in. I mean, it was . . . what defense counsel did is subpoenaed the dispatch tape, interviewed the dispatcher, and based on that information, he was convinced that the license plate had not been called in under the stop, until after the stop. Once we got to the testimony, it's pretty clear that it was called in twice before. Ms. Agnew. Once you got to the testimony at the hearing? Mr. Laird. At the hearing, yes. And then the other information and the two things that we say are really important along those regards is that there is the . . . as I understand the government position, it is that what happened was that since there is no mention of a silver Honda car on the dispatch tape, there was no mention of a silver Honda car. Ms. Agnew. Okay, so wait a minute. You just used the dispatch tape again. Mr. Laird. Yeah. Ms. Agnew. Is there a mention of a silver Honda on either tape . . . version of the tape? Mr. Laird. No. Ms. Agnew. All right. Mr. Laird. And the way that happened is this, is that there is some testimony from the officer, at least how they prepare these things. And they say what happens is they'll get a radio call from the officer, the officer provides some information, a stop, vehicle information, and then they hit F5. And then once you hit F5, that's the information that's down below the double lines on the CAD report. The information up above is not necessarily recorded in real time. But the information up above is information that contains a silver Honda car. Mr. Laird. But the silver Honda mentioned by the dispatcher, is that handwritten in, a check box in the vehicle box, or how did that get on there? Mr. Laird. If you look at the CAD report, which I think is 317, 318, it is in two places. It is in the place up above before the real time recording, and it's type of vehicle, silver Honda car, typed in. So somebody typed that in. S-I-L-H-O-N-D, which I guess stands for silver Honda. Yeah, and then at 21, one thing that's a little bit unusual in this case is that after the stop, the officer calls in and he says, so that never came back. Can you fax over to me how it ran before I stopped him? And at track 21, the real time recordings that are being recorded, it says VMA Honda car. VMA Honda, that's at 21, it's on the second page of the CAD report. Which again, verifies that when it was run before, it was run as a Honda car. That's also verified from some of the testimony. What happened? This time I ran it as a Honda. Well, whose mistake was that? Do we know? In our position, there's no mistake. The officer wanted to stop this car. He knew these cars were drug cars. He was right. He manufactured a reason to stop the car. He called in a Honda car. That's how he knew he was going to get the stop. And are you taking that position based on the fact that there's no audio, as I'm understanding, calling in a silver Honda, but it appears here on excerpt 317, because the dispatcher typed that in. It appears in two separate places. Right, and the dispatcher's testimony is that that must have come from the trooper. There's no way else she would get that. I mean, it must have come from the trooper. There's no way else she would get that. Her testimony is that it came from the trooper. That's my question. Also her testimony is that she ran it twice. Once before, and once this time as a Nissan. But the trooper testified that he did not at any time say that there was a silver Honda.  And I've been through this quite a few times. I think the guy was pretty good. I don't think he ever testified I never called it in as a Honda. No one asked him about that. I mean, of course, and so it makes sense he didn't. The other thing we see is kind of significant is when you listen to the government dispatch date, it clearly comes back as saying no match. He says it comes back no record. I have another question. I'm sorry. The dispatcher looked it up twice. But on page 317, I'm still looking at the same incident report. Under time and event, that listing, the third listing seems to show that a Nissan was looked for. And then the second event on page 318 shows a Honda was looked for. Do we have any explanation of that? Yes, Your Honor. Here is what happened is that 1642 radioed in generally corresponds to track 7 of the government dispatch tape. I'm stopping the car. It's a blue Nissan. Track 21, the track on the second page with the Honda car. The officer, after this is all done, after the drugs are found, after he's made the arrest, calls in and says, now we never found that. The way that, could you go ahead and send me the information on the way it ran before I stopped him? That's the rolling 28. Those are the rolling 28s. And the entry on the CAD report that corresponds to the officer's inquiry of how it ran before I stopped him is VMA HOND. He called in a Honda car. That's how it ran before he stopped him. And I'm down to like 20 seconds. Any more questions, anything to court? No, we'll give you a minute for rebuttal. We've asked a lot of questions, so we'll hear from the government. Good morning. May it please the court, counsel. I'm Megan Racheau, Assistant United States Attorney from the District of Nevada. The first thing I would like to start with is this issue of the silver Honda and the confusion regarding the government's provided dispatch tape and the dispatch tape that was subpoenaed by the defense. The government provided the dispatch tape approximately 30 days in discovery prior to the hearing, which was on June 9th of 2011. The government's provided dispatch tape was the entirety of the conversations between the trooper and the dispatchers for everything related to this particular case. So the only communications that were heard on this dispatch tape were from the trooper who made the stop to the two dispatchers with whom he was conversing. Defense had subpoenaed the dispatch tape independently. The government was not provided a copy prior to the hearing, and that's why in the record there was a 10-minute recess to allow the government a chance to review the tape to make sure that the information was substantially the same. The review of the dispatch tape, the government's dispatch tape as well as defendants, clearly shows that the trooper never called in the vehicle as a silver Honda. This issue was not explored before the district court, and neither counsel had given much weight to that at that point because the entirety of the communications was on the audio. Tracks one and two of the supplemental excerpt of record show that the trooper called in the vehicle, and when he calls in the vehicle, he is not calling in a make and model at all. He is simply calling in the state of the plate and the plate. So why did she say no match? What is she trying to match it to? Registration. It's my understanding that when she ran the Missouri and that plate, that what she got back is that there was no match to that license plate. That no car was... That no car was matched to that license plate. And where does your understanding come from? Because I don't see that in the record. My understanding comes from when the trooper was asked what he was calling in, he said that he was calling in a registration and... He didn't have a registration. The car was rolling down the highway. The license plate, excuse me, that he was calling in the license plate for a registration check. Okay. And that was what his understanding of the rolling 28 is. The only time that he called out the vehicle make and model is when he made the traffic stop and he called that out correctly as shown in track three. So the first time he contacted the dispatcher before he pulled over the car, you think he said what? He said he asked for a rolling 28. He identified himself, asked for a rolling 28. Then he called in Missouri... Oh, sorry. Forgive me. He called in the license plate? Yes, the license plate. And he called it in at that time with an O. When the dispatcher came back and said that there is no match, he asked her to run it again, replacing the O with a zero. And that still came back as no match. Based on that is why he initiated the traffic stop. So that's why your brief said no record, but you can see that that was an error. What she said was no match. Yes. Okay. But if she typed in the license plate number and tried to match it to Missouri, wouldn't the blue Nissan have come up? It should have. And that's why this becomes a mistake of fact as opposed to a mistake of law. There is no explanation as to why dispatch was unable to get a match for that plate when it was called in because the vehicle was properly registered. I suppose somebody could mistype a number or something and not realize it, but it's hard to understand how it wouldn't come back. Absolutely. But all we do have is audio where the trooper is relating what plate he's calling in. Dispatch relates it back to him and says no match. Well, in response to Judge Graber's question, I think we're really struggling to understand truly. But in response to Judge Graber's question about whether it could have been typed in incorrectly, looking at excerpt of record 317, doesn't this show us what she typed in? It's memorialized here. She typed in Silver Honda, right? She did type that in. However, remember that with that computer-assisted dispatch report, number one, it is subject to human error because someone is physically typing it in. Well, one thing I do notice is that on page 317 under vehicles at the top, it shows the license as P-G-O-R-9-A. And right below there under events, it shows P-G-0-R-9-A, which is what you were saying, replacing the one with the other. So it's just confusing. It's just confusing to me, sorry. Could I address that? It was covered in the dispatcher's testimony that the rolling 28s are not on the CAD report. So taking out that top part, which is the information regarding the stop, when you're looking at the 10 codes and when the stop begins, the first time that the CAD report is generated is when the trooper is calling out a traffic stop because there's no reason to have rolling registration stops appear in a CAD report because there may never be a traffic stop. If the registration comes back clear, they're not going to be stopping the vehicle on that reason. Counsel, you just said rolling traffic stop. So is it rolling or is it a stop? The rolling 28s are the calling in for giving the state and the license plate. Yes, I know, but you just said both and I'm trying to figure out which you meant. Did you mean rolling or did you mean stop? I meant to say that when the troopers are calling it in, it is not a traffic stop yet, that the vehicle is still driving down the road. Okay. And so the CAD report is not generated until the trooper is going to make a stop. In this case, the dispatcher testified that she started the CAD report with the last plate she had run for this trooper, which is the plate with the zero. Right. And does the audio recording show that he had her run anything else other than trying the Missouri plate with the zero and the O? No. Okay. Thank you. When you came to the podium, you said two things that I wrote down, but maybe I'm not sure I'm correct about one of them. Was he talking to one dispatcher or two dispatchers? Two dispatchers. The dispatcher who testified at the hearing was the initial dispatcher on this case. At some point, it switched to a different dispatcher, Mary, and when you listen to the tape, you can hear the two different voices. Well, at what point? It seems to me that's a very important question, given that there was this handoff and error. The initial error was under the dispatcher who was the one who testified at trial. When the trooper went back about eight minutes later, I think, into the stop, he called back in to try to run a check through the VIN, and that's when he was talking to a second dispatcher who said, you know, look, this actually has come back as a match that the vehicle is registered or something along those lines. That's a different voice. That's a different voice. Okay. And then if I could ask, you mentioned that there was a timeout during the hearing so that you could check these two tapes, and you said that they were substantially the same? Yes. The government's was more inclusive. It had the entirety from the very beginning all the way through, where it's my recollection the defense tape was through the traffic stop. It didn't have all the extra after the car had been towed, the calling out for the mechanic. So this is an important point to me, that defense had the beginning but not everything at the end versus the end and not everything at the beginning, because I think defense counsel said the opposite of what you're saying now, that his tape didn't have the beginning, but you're saying it just didn't have the end? It's my understanding they didn't have the end. To be clear, defense had both versions because the government had provided the dispatch tape in discovery approximately 30 days prior to the hearing. So that was the initial version that was introduced into evidence. When defense had his opportunity, he introduced his version, but there was no difference as my understanding is to the entirety of what's at issue here. I think there was a miscommunication with the dispatcher when he had pre-trialed or prior to the hearing, whether or not the ruling 28 showed up on the CAD report or not, and that seemed to be the main confusion in that hearing. But defense had the government's exhibit well before the hearing date. Counsel, I really can't understand what you're telling me at all now. I'm completely confused. Did they have the entire audio recording or not? Yes, they did. So earlier, I understood with your gestures to be telling me that there was sort of a bigger fish and then a smaller fish is what we would say in Alaska, that there was a longer segment of the audio, right, and that they were given, through your gesture, the middle part of the sandwich, the middle part of the tape, and now you seem to be saying they had the entire audio. So I'm going to listen one more time. They did, Your Honor. Through discovery, the government provided the big fish, if you were, the entirety of the dispatch recording. Defense had independently subpoenaed from NHP and had gotten a shorter version. So your understanding is that they had the entire audio, but they were using a shorter version. Yes. Without realizing it, apparently. Yes, they did have the dispatch tape, the entirety of the government's exhibit. That was provided prior to the hearing. The government was unaware until the time of hearing that they had subpoenaed a different, or had subpoenaed it independently, and I think that's where a lot of the confusion was because before the hearing, there was no opportunity for both sides to sit down with each other and listen to the entirety to make sure that both sides had the exact same thing. Both sides did have the exact same thing with the big fish. The government's recording. And there's no explanation for where this came from, where the dispatcher got this information? As far as the silver Honda? Yep. There's no explanation of that whatsoever. Okay. Did I cut you off? I didn't mean to. No, I'm sorry. I see my time is running out. I think Judge Toonheim has a question. It's run out, but we're going to keep asking questions. The trial judge during the hearing called out this silver Honda problem. Why wasn't that suspicious enough at the time to at least ask the judge to make a finding that this was a reasonable mistake of some kind as opposed to no finding whatsoever? I have no good answer for that. I think just in the heat of the moment, I missed it. Are there any further questions from the panel? I would just like to know whether there's any physical evidence that corroborates the supplemental report which recorded that the fender was flapping. There is no physical evidence that showed that the report that NHP generated did not notice any damage or note any damage to that bumper. Thank you. Thank you.  Mr. Maloney, you may have a minute for rebuttal. Again, if there's any additional questions, and it sounds like the court would benefit from this other dispatch tape, should I make that available? My question is, is it correct that the defense had the entire audio before the hearing? Yes, but the other thing when you listen, and the entire audio being the more complete government audio, when you listen to it, it doesn't do anything to confirm or not confirm that the car was called in on the rolling 28s prior to the stop. I understand that, counsel, but if you can focus on my question, please, it would help me so much. You have the entire audio, and then you had separately subpoenaed and received another version of the audio that was a sort of a sub part? Previously, yes. When did you realize that the tapes were different? The only information I have is there is some indication at the time of the trial hearing that they realized the tapes were different. During the hearing? During the hearing, yeah. That's the only information I have. Okay. Unless, any additional questions? I don't believe so. Thank you. Should I send you the- I think we'll let you know if we need anything further. Thank you. The case just argued is submitted. We appreciate the arguments of both counsel.
judges: Tunheim, Graber, Christen